We will proceed to hear, excuse me, FTC v. Renson. Good morning, Your Honor. Do we have counsel for the, uh, yeah. Yeah, please come up and, uh, before you start, Mr. DeRuzzo. Please. May it please the Court. Joseph DeRuzzo on behalf of the Appellant Joseph Renson. I'd like to reserve three minutes for rebuttal. In this Court, in this case, the Court's opinion in Blue Hippo required that if the presumption of consumer reliance applied, then the defendants, including my client Joseph Renson, must be allowed to put forth evidence showing that certain amounts should be offset against the baseline as calculated via Blue Hippo's gross receipts. Am I wrong that the point of this, uh, rebuttal was to exclude situations in which, despite the presumption of reliance, there was no reliance? Is that what the, the issue is there? I'm sorry, Judge Lynch, could you say that again? The, the, uh, this Court in Blue Hippo said that the district court, that there could be a presumption of reliance in this case, right? And sent it back to the district court and said, now you, taking that into account, decide whether the conditions for the presumption apply. Correct. And if you find that it applies, uh, then still it's a rebuttable presumption and Mr. Renson should have an opportunity to present evidence in rebuttal. Correct. So the, the point of the rebuttal is to rebut the presumption of reliance. Is that right? Yes. The best way I could put it is this, Judge Lynch. The presumption effectively flips the burden. Traditionally, plaintiff has a burden of production going forward and, and persuasion, right? But here, the FTC, via the FTC Act, gets the presumption upon a threshold showing. At that point, the presumption, the burden shifts to my client to go forward to put in evidence and then has his, his burden of persuasion as, as well. Right. But the issue on which that burden has shifted is the question of whether the consumers to whom what are now stipulated were misrepresentations were, were made relied on those misrepresentations. That's the issue that the, uh, presumption applies to and that's a rebuttable presumption and that's why you get an opportunity to rebut that. Am I wrong about that? Slightly. And one distinction. The, the misrepresentation that, that's an issue here is a misrepresentation of omission. Yes. And that is critically important because, as we all know, once you get the, the presumption flipped to my client, he needs to prove that the omission did not negatively impact the consumers. Yes, exactly, because they did not rely. Exactly. And as an... But, but now here's, so here's my problem. Okay. And, and see if you can explain this to me because I'm having trouble getting it. The, uh, the misrepresentation by omission is the omission to tell the consumer that this store credit was, uh, not applicable against shipping and handling. And sales tax. And sales tax. Yes. And now I understand pretty well an argument that, gee, probably these people didn't rely on that at all, uh, because really they're bamboozled by the specter that they're going to get the credit in the first place, uh, for buying a computer on credit and if they don't, uh, they'll at least get store credit so they can't really lose very much. Uh, and I don't know whether shipping and handling, tell, if they had been told, oh, but shipping and handling isn't covered, that would change anybody's mind. But what my problem is, is once there is a presumption in place that they did rely on it, how would the fact that some people down the road weren't charged shipping and handling at all have any relevance at all to the question of did a consumer who was told falsely, it's now stipulated, that, even by omission, that the store credit would be good against shipping and handling. That's what they were told at the time. If it later turns out that the, the company's policy wasn't always carried out and some people were never charged shipping and handling anyway, that's, that goes to whether it was true or not really, uh, or something which was stipulated away. It doesn't go to whether a person who is told, in effect, the store credit will work against shipping and handling is going to rely on that or not rely on that when the thing you're talking about is something that nobody knew at the time, uh, that he couldn't have known, the consumer couldn't have known that at the time, so how would it affect whether he's going to rely on this representation? All right, Judge Lynch, we have to unpack that. First, the relevance you're talking about, I believe, is a 4-1 relevance versus a Rule 26 relevance. And my client, who wasn't a... No, no, no, no, no. There's a theory. There has to be a legal theory, doesn't there, as to why this evidence that you're looking to get in discovery would be relevant to the issue before the court. Okay. Which is, is this something that, uh, this person could affect whether this person relied on the representation or didn't? So my client would be... should be able to show individualized instances where the reliance upon... the consumer's reliance was either unreasonable or didn't happen or didn't result in damage. Why would it... Well, it didn't result in damages. So you want to look at these particular people and say that they, uh, weren't... But all the people who are in the category are people who never got anything from the company, not people who got something and weren't charged shipping and handling. I think the best way I can explain it is a sales tax example. Suppose a purchaser lived in New Hampshire. There is no sales tax in New Hampshire, okay? So if the purchaser goes online and at the time they make the purchase, the omission that sales tax cannot be used via the store credit, right, that omission that Blue Hippo made writ large to the United States would not apply to New Hampshire. Well, but the presumption is that the representation that the store credit would apply to shipping and handling and sales tax is what's at issue. Right. So we know that the New Hampshire residents didn't have sales tax. How is it going to be of any value to you to rebut the fact that they... the presumption that they relied on the entire misrepresentation to show that they had no sales tax? I just don't get it. I think I should be able to unpack that into a sales tax component and a shipping component. But the consumer doesn't have any idea at the time. Apparently the company didn't even have any idea at the time that somebody in some state somewhere was not charging shipping and handling, maybe, to anybody. But, Judge Lynch, if you weren't... if a consumer... if the omission was regards to sales tax and sales tax could not have been charged and was not charged, I would submit there wasn't an omission at all. And if there wasn't an omission, there couldn't have been any damage. Well, if there wasn't an omission, now you're contesting what you stipulated to, which is that this was false. Now you're saying it wasn't really false at all, because at least in the case of New... or it was only two-thirds false, because to New Hampshire residents, the only relevant misrepresentation was that the store credit would operate against shipping and handling, not that it would operate against the non-existent New Hampshire sales tax. Now you're contesting whether that was entirely misleading or not. You're not... that's not about reliance. The issue is, did this consumer rely on the fact that he was lied to in this particular way, which is stipulated. I would disagree with that, but let me give you the shipping example. There are many instances that we all think we can all agree. You'll see advertisements on TV or on the Internet where if you reach a certain dollar threshold, shipping is free. Okay. So take my example. If I'm New Hampshire, and there is no sales tax, and I go on Blue Hippo's website, and I have enough credit so that shipping is free, and at that point, there is... I didn't reasonably rely. The only people who are in this damage calculation are people who never bought anything. So how would they be affected by... how would their damages be affected by the fact that some other person in some other state was not charged shipping and handling? And the problem I have with the proof is the way that when you take... when you take the presumption and put it on Mr. Renson, and he has to show that the omission did not do something, okay? Prototypical proving a negative. How could it do something to follow up on Judge Lynch? These are all people who didn't buy anything. So when they order a printer, instead of the... because they didn't have enough credit, they say, all right, maybe I'll buy a printer if there's one for $100 or something. They then order it, go to the shopping cart, like we all do, and they see no shipping, no handling costs, no tax. These are the people who then don't buy it. None of these people bought anything. So how is it relevant  which I can't figure out why some of these potential purchases didn't include shipping and handling. Maybe you can answer that question too. Why wasn't there a charge? I don't know. You don't know either. And that's why we want to get the discovery out of the blue. You don't know either. No, I don't know. Is it because some states don't permit shipping and handling over a certain amount? You don't know. I don't know. I can't represent... These are the people, to follow up on what Judge Lynch was pointing out, these are the people, the screen shows up for their shopping bag, says here's your printer for $100. By the way, there's no shipping, handling, or tax on it. And they say, I'm not buying it. How does that make any sense? The 55,000 people didn't buy anything at any point with the credit they had. How is the omission about whether there's shipping and handling that you can use your credit on relevant at all to those people? Judge Droney, my best answer to that is this. When you have to prove or disprove a negative, it can rarely, if ever, be done with direct evidence. As a result, you have to get into circumstantial evidence. The circumstantial evidence is purely in the possession of the Blue Hippo trustee. Wait, but why is it evidence of anything? Even before they get to the point of looking for a refund, that's not even the point of reliance. The point of reliance is when there's a guy on the phone telling them, this is a great deal, you cannot lose. Because if you make your payments, you will get a computer on credit. And if you don't make your payments, don't worry, you can't lose anything because you're going to get a store credit by which you can buy the printer to go with the computer that you're not actually going to get. And so you're not going to lose anything. And at that point, the question is, at that point, are they relying on this implied representation that that store credit covers shipping and handling? Now, as I said, I don't even think that's a terribly logical conclusion, but we're past that. There's a presumption that they did rely on it. And I want to know how something that happens months later to other people is relevant to what the person is relying on when they're on the phone deciding to enter this deal, which leads to their not getting anything for the millions of dollars of payments that they made. That's what I need you to explain to me, and I'm not getting it. There are three things that would satisfy my client's burden. One, that there was no reliance. Two, that the reliance was unreasonable. Or three, that the person wasn't damaged. Now, going to the unreasonableness of the reliance... How could it be unreasonable to rely because of facts that these people have no way of knowing? And that's the point, Judge. I need to show through circumstantial evidence... No, no, no, you need to show that they had some way of knowing that this shipping and handling issue that you're raising had some bearing on this. And they have no way of knowing that at the time that they're relying or not relying. So why is it unreasonable to rely on a representation that shipping and handling are going to be covered when you're telling me that for some unspecified minority of people it turned out that these people have no way of knowing about that shipping and handling wasn't charged? Why does that make it unreasonable to rely on what you're being told at that moment? I would submit, Your Honor, that it's unreasonable... Let me just put it this way. Imagine... place yourself in my shoes. The court of appeals comes back and says that if the presumption of reliance applies, right, then the burden shifts to my client. Okay. If you're me, what do you do? Maybe you can't do anything because maybe there's no argument that's available to you. You don't have to have some avenue to produce evidence that is irrelevant. You've got to explain why it's relevant to these issues. And as to the damages, it isn't relevant to the damages either because these are people who did not get anything. They're not the people who did or didn't get... You know, if the FTC was charging your client on a theory that everybody was charged some amount of shipping and handling based on some average or some theory or something, it would seem to me you'd have a very good argument that you're entitled to look into who actually did and who actually didn't pay shipping and handling. But that's all irrelevant to these folks because the only people that you're being charged with are people who didn't get anything with or without shipping and handling. I think that's problematic because in an omission case, that would effectively turn a rebuttable presumption to an irrebuttable presumption. No, it's not. It could be rebutted. Because if you had any evidence that was relevant to the question of did they rely, you could rebut. You're only telling me that you don't have any such evidence. Because that evidence is... No, no, no. Because if you got all of those records, you still wouldn't have any evidence that is relevant to what those people thought at that moment in time. Judge, if I could draw an analogy to college basketball. Just because a 16th-ranked team is playing the No. 1 doesn't mean that you don't play the game. And maybe we lose in summary judgment. Maybe we lose at trial. But all my client wanted is an opportunity, the chance... To give discretion to a judge in deciding how much discovery to award based on what is plausible and what is not? Without a doubt, discretion is not unfettered. And in this case, all my client wasn't... The real analogy to college basketball is just like the players, your customers got nothing. They don't get paid. They don't get what professionals ought to get. That's the analogy. They get screwed. Well, Your Honor, I would disagree with that. But if I could... And on that note, you've reserved three minutes for rebuttal. Mr. DeRuzzo, we are significantly over your time, so let's hear from Mr. Bergman for the FTC. Good morning, Your Honors. May it please the Court, my name is Michael Bergman. I represent the Appley Federal Trade Commission in this matter. As Judge Lynch has made clear in the questionings before, the focus on this issue is at the time of the purchase, when the consumers actually entered into their initial computer purchase, did they rely on the representations at that time? Here, as Judge Hall indicated and wrote in the Blue Hippo I matter, the injury occurs at the moment of the misrepresentation, which taints subsequent purchasing decisions. So here consumers might not have entered the transaction at all from the beginning if they had known all the terms of the store credit policy, including the fact that they faced the possibility of additional charges when they redeemed the store credit. So the focus, as Judge Lynch has made clear in his questionings before my opposing counsel, is the time that we're looking at is not down the road whether store credit is at the time that it was redeemed, but at the moment of purchase, what did Blue Hippo tell the consumer? And as Judge Lynch indicated truthfully, it's already been stipulated, there was already a finding already by the district court that was unchallenged that Blue Hippo lied to consumers when they failed to disclose these material terms of the store credit refund terms. They did not tell consumers when they entered the transaction, that's the time period we're looking at, that store credit may not cover these additional charges. That's the time period. We don't look down the road in terms of what would have occurred months or years later. And this is very important to consumers because, in fact, consumers, as the district court indicated, believe they were entering essentially into a risk-free transaction. They thought at the time they gave money, they turned money over to Blue Hippo, that they would either get a computer if they got all the financing payments and satisfied all their criteria, or, worst comes to worst, they get a monitor, they get a printer or a camera, using their store credit that would pay for all of that. That was a representation the district court found July 2010 that Blue Hippo was in contempt by failing to disclose those terms of the store credit policy, and that was unchallenged. So that's an adjudicated finding. So, again, the misrepresentation and the time period that we're looking at is at the time of the initial representation. It's not really an issue in this case anymore, I don't think, but I am still a little puzzled about why this is such a critical term. If it were true that the customers would be able to redeem the store credit for things that were of any actual value to them... You know, I can get a $300 camera because I paid $300 in there. Is the shipping and handling that's being charged something outrageous? I mean, is it not proper shipping and handling? Because it seems to me, if I'm told that, I still think that's a pretty good deal. I don't know. It may be that the real problem, it seems to me, is people are being induced into a transaction where store credit is never a substitute for getting your money back, because when you go to the store, you're going to find that there's nothing you really want, especially if what the store sells is computer peripheral equipment and you never got the computer. But I'm wondering why the real problem here is I could get a $300 camera, and all I'd have to pay is $20 for shipping and handling or something like that, even for a poor person. I'm not sure that if I were told that at the beginning... After all, I'm thinking, I'm fantasizing I'm actually going to make all the payments and I'm going to get the computer. Would that representation really change people's behavior? Is there any evidence of that? Well, in fact, we do have the consumer complaints. In terms of just the anecdotal evidence which the district court relied upon, the five complaints, and in fact, as just an empirical matter, they were not insignificant. If you look at those complaints and they're in the appellate appendix, they're roughly 10% to 15% of the overall charge. These are not insignificant, and you also see... Especially because these are most likely poor people who are in the market for this kind of deal in the first place. Exactly, Your Honor. I mean, these were credit-challenged, financially-challenged consumers. So whether it was $20 or $50, and in fact, again, these five complaints were anecdotal, but maybe in the 10% to 15% category, this meant a lot to these people. Again, they thought they were entering, essentially, into a risk-free transaction, but they were not because there were these hidden fees down the road. But again, what we're looking at in terms of the time frame is not down the road, but at the time of the initial transaction. They're sitting there, before they give any money to look up at the end of their transaction, they want to know all the material terms of their deal. They're not getting the benefit of their bargain, OK? And so when they find out, you know, what the actual misrepresentation here was, a failure to disclose, which was found adjudicated, not challenged, as you said, Judge Lynch, was stipulated... Just so I understand, and the evidence that Mr DiRizzo is concerned about is evidence that, in some number of cases, people who did buy something were not charged shipping and handling. Where does that evidence come from, and do we have any idea why that took place? So the evidence that he's asking for are what's termed these completed store credit orders. There are about 8,000 of them, but they consisted really of three different groups. I'm hoping... I'm asking you a question, Judge Lynch. If not, please follow up. I understand that he wants to get the records of all of the people, the 8,000, as opposed to the 55,000, who didn't get anything. The 8,000 who did try to redeem their store credit. And why is there some reason to think that the... Since it's been stipulated that the company's policy was in fact not to allow the store credit against shipping and handling, how do we get evidence that makes it plausible that anybody wasn't charged shipping and handling? Where does that come from? In the record that's now here. Forget the 8,000 cases for the moment that he's trying to look at. Correct. So I think, and this is in his brief, and we addressed it as well, I believe that it extends from... Maybe you can ask Mr. DeRusso. But I believe it extends from there was some testimony during the original contempt proceedings back in early 2010, testimony by the FTC's expert, Dr. Rez Ueli, where he ultimately said that... And this is essentially the extent of what he's relying on, that of 750 of the 8,088... These are actually people who in fact got their... Who in fact got store credit merchandise, so they're not even part of the injury pool. That of those 750, Dr. Ueli testified, about two-thirds in fact did have to pay additional payments. Only one-third did not. So when you look back... So why did the one-third not? We don't know, Your Honor. We don't know. Like, are there states that say you can't charge a certain amount of handling costs in a sale? Do you know that? That was not part of the record. He was never... We don't know that. I mean, I'm trying to figure out why these one-third of people who bought items weren't charged the handling costs. It's not in the record. It's probably happenstance, completely random. Happenstance? What does that mean? Or error. It could have been error by Blue Hippo, just not following their policy. We know what the Blue Hippo's policy was, which was confirmed by Mr. Renson. No exceptions, okay? The store credit handling would be covered by store credit. I'm sorry. Online merchandise would be handled by store credit with no exceptions. With regard to these 250 out of 750, again, these are not even part of the injury pool. This is just what he's trying to... People who actually redeemed it. The testimony didn't go beyond that in terms of why. At bottom, Mr. Renson has given no systematic reason at all why there are these, in the few instances, exceptions to this policy, there was any kind of systematic or categorical reason. It could have been error. It could have been in response to a consumer complaint. There's nothing in the record with respect to why this one-third of these folks who, in fact, did get something, not part of the injury pool, didn't pay. There's, again, no... And that, it seems to me, if there had not been a concession as to the policy, that might be something that could be litigated as an argument that, no, we didn't make a misrepresentation because we didn't have a policy of not applying it. The error was in the other direction. It was a mistake when people didn't give the credit. But that's all under the bridge by now. Correct. That's right. That was adjudicated. They didn't challenge that. That was under the bridge in the first case. It was under the bridge in the first case, correct. And as this court in Blue Hippo 1 indicated, Judge Hall, that this is a finding by the district court and that the defendants did not challenge it. With no additional questions, I will sit and respectfully request that this court affirm the final judgment of the district court.  Thank you. Mr. DeRuzo. Thank you, Your Honor. Judge Lynch, the record site is appendix at page 177. That goes to the one-third for the... That's the testimony of the expert. Right. And to go back to your example, you may very well be right that a consumer determined that, notwithstanding that shipping and taxes were to be charged, that they didn't care, that they didn't rely on it. And counsel for the government has admitted that the anecdotal evidence is about 10% of Blue Hippo's customers complained. Okay. I think we can agree that 10% isn't 100%. And even if you extrapolate out, then maybe the sample size isn't big enough. I don't know if it would be worth it or if I would allow such an expedition if I were a judge in the face of a presumption. Maybe if you were asking, I want to depose each and every one of those 55,000 people and ask them, did you care about the shipping and handling, that might be something that's relevant. But the fact that you're looking for is about whether other people who aren't even part of that 55,000 people may, by policy, by accident, by some miracle, were not charged shipping and handling. And I'm just having a lot of trouble understanding why that goes to the mental state of the people at the moment that they bought and why it would tell us whether they care about shipping and handling, which is the issue we're looking at. Well, since I wasn't trial counsel at this point, I would submit what I believe happened was trial counsel was trying to be as discreet and judicious as possible by not wanting to, at least at this initial stage, depose everyone by just getting the initial documents from the Blue Hippo trustee to see what's there. And maybe at that point we realized we can't make our case and we throw in the towel. But maybe there's something there. Maybe based upon that, like, okay, we got something here. Of these 7,000 orders, maybe only 500 are worth drilling down into. Maybe it's cost prohibitive. I don't know. But the point is all we wanted is at least to see what the Blue Hippo trustee had. And maybe you're right. Maybe we lose. You see, the problem is you have to have a theory of relevance. I understand the point that sometimes what you get in discovery doesn't tell you what you hoped. Maybe you look at these documents and it turns out that actually the expert was mistaken and that everybody was charged shipping and handling, and you give it up. I understand all that kind of issue. The problem is to get discovery you have to have a theory as to why it would make a difference. If it turned out to say good stuff from your vantage point, why does that have anything to do with our issue? Your Honor, I would just submit this. For purpose of Rule 26, the discovery doesn't need to be admissible. It needs to lead to admissible evidence and potentially lead to the presentation of the litigant's case. I would submit that where you have the misrepresentations, the omissions by Blue Hippo and Blue Hippo's employees to Blue Hippo's customers, my client, who at that point didn't have possession of the documents, reasonably asked for, give me a shot at looking at the documents. If we lose, we lose. But give me a shot to at least step out onto the court. And with that, I think no matter the standard of review, the district court erred by not allowing us a shot at the game. And I would submit that based upon that, the court should reverse her man with instructions to give us at least a small bite at the apple. I thank you very much for your time. Thank you, Mr. Caruso. Thank you both. We'll observe decision in this case.